## JOSEPHINE PELTIER v. CITY OF ST. LOUIS, Appellant.

### Division One, November 29, 1911.

1. **NEGLIGENCE OF CITY: Public Street: Proof and Instruction.** Where the ordinances of the city, introduced in evidence, in many ways recognize the existence of the streets in question as public streets and the parol evidence shows they have been extensively traveled by the public for many years, and there is no evidence to the contrary, the court should not sustain a demurrer to the evidence on the ground that there is none tending to show that the streets, at the place of the injury, were public streets, nor should it submit that question to the jury, but should instruct them that the streets were public thoroughfares, and under such circumstances an instruction for plaintiff which does not define a public highway is not error.

2. ————: **Rut in Street: Instruction: At any Point.** An instruction telling the jury that if they believe from the evidence that the public street "at the point mentioned in the evidence . . . was on that day in an unsafe and dangerous condition for travel thereon," does not authorize a verdict for plaintiff if the jury believe the street was in an unsafe and dangerous

condition at any place, there being no evidence that the street was defective at any other place, and the evidence identifying the rut at which plaintiff was injured with that mentioned in the petition.

3. ————: **Public Highway: Instructions: Error Against Respondent.** Where under the facts the court should have declared, as a matter of law, that the street, at the point of the accident, was a public highway, an instruction submitting that issue to the jury, if erroneous, was an error against plaintiff, of which the defendant city on its appeal cannot complain.

4. ————: **Instruction: Damages: Medicine: No Evidence.** Where plaintiff testified she did not "require very much medicine except when I was taken with blood poison" and her evidence shows that she paid out $219 for nurse hire, that one physician charged $125 and that another had not presented his bill, an instruction telling the jury that they might consider "any expenses she may have incurred for medicine, medical attention and nursing," cannot be held to be without evidence to support it, in view of the fact that both arms were broken, one in two places, and she was helpless for eight months, and the verdict ($1500) is very small, considering her injuries.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow,* Judge.

AFFIRMED.

*Lambert E. Walther* and *Truman P. Young* for appellant.

(1) There was not sufficient evidence to take the case to the jury in support of plaintiff's allegation that Euclid avenue at the place mentioned was a public street and opened by the city to the public for travel. It is within the discretion of the city officials whether or not to open up a public street. Mere title to the street is not sufficient to show that the city has assumed jurisdiction over it as a public street. The city will not be liable until it does some act showing an intention to assume responsibility, or some act that amounts to an invitation to the public to use the street. A street may exist on paper and the title to the same be in the

city, and the city not be responsible for its condition. Furthermore, the city may elect to improve only a part of a street; it may open for use only half of the width of a street and leave the remainder in its natural and unimproved condition, and will not be liable for the defects existing upon the unimproved portion. Downend v. Kansas City, 156 Mo. 68; Downend v. Kansas City, 71 Mo. App. 529; Meiners v. St. Louis, 130 Mo. 284; Baldwin v. Springfield, 141 Mo. 205; Brinck v. Collier, 56 Mo. 156; Craig v. City of Sedalia, 63 Mo. 417; Hunter v. Weston, 111 Mo. 176; Conner v. City of Nevada, 188 Mo. 159; Ely v. St. Louis, 181 Mo. 729; Atkinson v. City of Nevada, 133 Mo. App. 1; Benton v. St. Louis, 217 Mo. 703; Curran v. St. Joseph, 143 Mo. App. 618; Holding v. St. Joseph, 92 Mo. App. 143. (2) The power to pave a street is a legislative power for the exercise or non-exercise of which the city will not be liable. It may in the exercise of discretion, leave roads in the outlying districts in their natural condition as dirt or mud roads and no right of action can accrue for failure to pave. In case of an accident on a mud or dirt road the plaintiff must show that the accident was due to some condition which was unusual and sufficiently flragrant to charge the city with notice and was not merely incident to the character of the road. The question of negligence, like the question of notice, is a relative one and will depend upon the location of the street in question and upon its general character. Young v. Kansas City, 27 Mo. App. 114; Gallagher v. Tipton, 133 Mo. App. 560; Neff v. Cameron, 213 Mo. 358; Stephens v. Macon, 83 Mo. 345; Franke v. St. Louis, 110 Mo. 516; Carrington v. St. Louis, 89 Mo. 208; McKissick v. St. Louis, 154 Mo. 588; Williams v. Hannibal, 94 Mo. App. 549. (3) The court erred in giving instruction number five of its own motion. This instruction authorizes recovery for medicine, though there was no evidence that the plaintiff had incurred any expense therefor. For this reason

the instruction was erroneous. Heidbrink v. United Railways Co., 133 Mo. App. 40; Radtke v. Basket & Box Co., 229 Mo. 17.

*John M. Fulton* for respondent.

(1) When a street is a public street it is the bounden duty of the municipality to keep it free from defects, obstructions and chuckholes, and to be on the alert to repair and remove them to insure the public safety. The defendant's failure to repair caused the injury to the plaintiff. Benton v. St. Louis, 217 Mo. 700. (2) The city of St. Louis, the said defendant, should have been more on the lookout for defects and obstructions on the aforesaid Kingshighway boulevard because there had been excessive rains off and on during the fifteen days preceding the day of the accident. The defendant neglected its duty, and due and proper care were not exercised. Meiness v. The City of St. Louis, 130 Mo. 274. (3) A city that has a dirt road that is a public street is liable for injuries effected by defects and obstructions in that road that it neglects to repair after having had sufficient notice. (4) The city of St. Louis assumed ownership and control of Kingshighway boulevard running directly south from Euclid avenue and of Euclid avenue itself by its permission to the Taylor Avenue Railroad Company to lay its tracks over the Wabash Railroad tracks on Euclid avenue; and the construction by the city itself of the Kingshighway Bridge over the Missouri Pacific and San Francisco Railroad tracks on Kingshighway boulevard, as aforesaid, are acts of themselves indicative of ownership and a recognition of Kingshighway boulevard aforedescribed as a public street. City Ordinance No. 17,010; City Ordinance No. 17,188; City Ordinance No. 21,346; Ruppenthal v. City of St. Louis, 190 Mo. 225.

WOODSON, J.—The respondent brought this suit in the circuit court of the city of St. Louis, to recover $10,000, against said city, as damages for personal injuries sustained by her while driving along one of the streets thereof, through the alleged negligence of the city, by permitting said street to become and remain in an unsafe and dangerous condition to persons driving thereon.

The facts of the case are practically undisputed, except as will be hereafter noted, and are substantially as stated by counsel for respondent, namely:

"The plaintiff, whose age was forty-five at the time of the trial of the case, was on June the 9th, 1904, on her way home between nine and ten o'clock at night, driving a horse attached to a small spring wagon on Euclid avenue in the city of St. Louis, Missouri, crossing the Wabash bridge and passing on about two hundred feet to the terminus of Euclid avenue where it meets and merges into Kingshighway boulevard, which runs due and straight south beyond the said Euclid avenue. The respondent having arrived about ten feet from the paved end of Euclid avenue and on Kingshighway boulevard, her horse, going in a trot, stepped into a hole or deep depression in the street, caused by the abrasion and wearing of heavy teams, vehicles, mud and rain on said Kingshighway boluevard, and the fore wheel of her vehicle entered into it with such suddenness and force as to throw her out over the horse's back onto the ground and break her right arm and left arm in two places, causing her much suffering and pain and rendering the said limbs almost useless. While the plaintiff was going south on Euclid avenue and on Kingshighway boulevard, a certain work car, with more noise than other cars, closely followed her, and stopped when she was thrown out and its motorman and conductor ran to her assistance, picked her up and placed her on the grass upon a matress she had in the wagon, where she remained

until half past eleven o'clock that night, and then was taken in a city ambulance to its hospital and was there seventeen days. For eight months the plaintiff had to be fed as a child of tender years and was unable to dress herself, had to have her arms reset and could not use them for eight months and was under the care of a physician over a year. At the time of the accident the plaintiff was engaged in the laundry business, and because of her misfortune it ceased and its profits of eighteen dollars a week also. Her nurse hire amounted to $219 and her physicians' bill to $125.''

There was an abundance of evidence tending to show that the street in question was a public thoroughfare of the city, and none to the contrary; also that the hole in the street was dangerous, and had existed for a sufficient length of time prior to the injury to have enabled the city to have discovered and repaired the same, had its servants and agents exercised ordinary care in that regard.

A trial was had, and the jury, under the instructions of the court, found for the plaintiff, and assessed her damages at $1500, and after taking the proper preliminary steps, the city appealed the cause to this court.

I. Counsel for appellant first complain of the action of the trial court in refusing to sustain a demurrer to respondent's evidence.

This complaint is predicated upon the contention that there was no evidence introduced tending to show that Kingshighway boulevard, or Euclid avenue, at the place of the injury, were public streets, or were opened by the city to the public for travel.

There is no merit whatever in this contention. The ordinance of the city, introduced in evidence, in many ways recognized their existence as such; and the parole testimony of the witnesses shows that they

had been extensively traveled by the public for almost a half century.

In fact there was no evidence of any consequence to the contrary.

Under the uncontradicted evidence of both parties, we are unanimous in the opinion that the court should not have submitted that question to the jury, but should have told them that both of said streets were public thoroughfares of the city.

What we have here said also disposes of the objection urged against the first instruction given by the court on behalf of respondent, which, it is contended, does not define the term "public highway" and ignores the defense that the portion of the street, though belonging to the city, had never been opened for travel.

II. The second instruction given by the court on behalf of the respondent is complained of by counsel for appellant, for the reasons stated: "This instruction makes no mention of the particular rut which is alleged to have caused the accident, but authorized the jury to return a verdict for plaintiff if they believed that the road was in an unsafe and dangerous condition" at any other place.

The objection to that instruction is predicated upon a mistake of fact. The instruction in that regard, reads as follows: "The court instructs the jury that if you believe from the evidence that Kingshighway, near its intersection with Euclid avenue, in the city of St. Louis, at the point mentioned in the evidence, was on the 9th day of June, 1904, a public street of said city as mentioned in the instructions, and was on that day in an unsafe and dangerous condition for travel thereon," etc.

The hole mentioned in the petition and which caused the injury, was located at the point in the street mentioned in the evidence, as above stated.

There is nothing in the instruction to warrant the contention that the jury was authorized to find for the plaintiff, if they found that the street was in a dangerous or unsafe condition at any other point than the one mentioned in the petition and evidence. In fact, there is not a word of evidence in this record which tends to show that the street was defective at any other point than the one at which respondent was injured.

III. Instruction number three given for respondent is also complained of.

The vice of that instruction complained of, is couched in the following language: "If the jury believe from the evidence that Kingshighway, near its intersection with Euclid avenue, at the point mentioned in the evidence . . . has been and was a public street in the city of St. Louis, belonging to said city as a public street, for more than ten years prior to June 9th, 1904, and that during all that time it had been and was used by the public for travel in vehicles, and that it was a public necessity, that said street at said point mentioned herein should be in a reasonably safe condition for travel," etc.

This objection is of kindred nature to the one mentioned in paragraph one of this opinion. There, as here, the court was imposing upon the respondent the necessity of proving to the satisfaction of the jury that the street in question was a public highway. We there held, that under the uncontradicted evidence in the case the court should have declared, as a matter of law, that the street was a public highway, and under that view of the law it was wholly immaterial whether the jury found it to be such or not, and all instructions given by the court submitting that question to the jury were error in favor of the city and against the respondent, and if error, the appellant is in no position to complain.

IV. Instruction numbered five given for respondent is also objected to, because it authorized a recovery for medicine, though there was no evidence that she had incurred any expense therefor.

The evidence shows that one physician charged her $125, and that she had another, but he so far had presented no bill for his services.

The evidence also showed that she paid $219 for nurse hire.

In the same connection respondent was asked.

"Q. What did you pay for medicine? A. I didn't require very much medicine except when I was taken with blood poison."

In mentioning the elements of damages that the jury might take into consideration in fixing the amount of their verdict, the instruction under consideration, among other things, told them that they might consider "any expenses she may have incurred for medicines, medical attention and nursing," etc.

In the light of the evidence set out, we are of the opinion that this objection is not well founded. It is true her evidence shows she did not need much medicine, and presumably she did not incur much of a debt on that account, yet we have no right to presume, under that evidence, that the jury allowed her anything more than a nominal sum therefor, which they had a perfect right to do.

The only surprising thing to us is that the verdict of the jury in this case was so small. The respondent had her right arm broken in one place, and her left arm broken in two places; she was confined to the hospital for seventeen days, and was perfectly helpless for eight months; could not feed or wait upon herself during that time. She incurred $219 for nurse hire, and more than $125 for medical treatment. Yet the jury allowed her only $1500.

The city should consider herself fortunate in escaping with so small a verdict.

Finding no error in the record, the judgment of the circuit court is affirmed.

All concur.